UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY TOLIVER (K74976), | ) | |
| | ) | |
| Petitioner, | ) | 13 C 8679 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| RANDY PFISTER, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM OPINION AND ORDER

Anthony Toliver (which is how he and some official Illinois documents spell his name, though the Warden and other official Illinois documents spell it "Tolliver"), an Illinois prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. He was convicted in 2007 of attempted murder, home invasion, and criminal sexual assault, and sentenced to 50 years' imprisonment. Toliver's petition asserts that: (1) new evidence establishes that the victim lied about not receiving Toliver's Social Security disability checks; (2) the victim's testimony about her bipolar disorder's not causing her to hallucinate is contradicted by medical opinions; (3) his attorney was ineffective in failing to call alibi witnesses, including a psychiatrist and the investigating detective; and (4) the evidence was insufficient to establish his guilt beyond a reasonable doubt considering (a) the victim's false and confusing testimony and (b) the prosecutor's heavy reliance on an invalid protection order. *Id*. at 5-6. Toliver attaches to his petition a statement from fellow prisoner Anthony Harden, who says that other people broke down the victim's door and beat her when attempting to collect money for cocaine she had bought on credit. *Id.* at 33-35. The petition is denied, and the court declines to issue a certificate of appealability.

**Background**

A federal habeas court presumes correct the factual findings made by the last state court to adjudicate the case on the merits, unless those findings are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012) ("We give great deference to state court factual findings. After AEDPA, we are required to presume a state court's account of the facts correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.") (internal quotation marks omitted); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010); *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). The Appellate Court of Illinois is the last state court to have adjudicated Toliver's criminal case on the merits. *People v. Toliver*, 2012 IL App (1st) 102930-U, 2012 WL 6591948 (Ill. App. May 29, 2012) (reproduced at Doc. 13-14); *People v. Tolliver*, No. 1-07-3466 (Ill. App. Sept. 15, 2009) (reproduced at Doc. 13-1). Following are the facts as described by that court.

Sometime in mid-November 2004, Toliver and his girlfriend of four years ended their relationship and he moved out of her apartment. Doc. 13-1 at 2. On November 30, she obtained an emergency order of protection against him; three days later, when Toliver came to her home, supposedly looking for his Social Security disability checks, she called the police and told him to leave. He did—only to return a few hours later. This time, instead of knocking, he kicked down the double-locked back door to her apartment. She tried to call 911, but Toliver ripped the phone out of the wall and repeatedly hit her on the head with it. Continuing to punch her in the face, he dragged her by her hair across the apartment and told her "you're going to die tonight." He then forced her to disrobe and to fellate him. Responding to calls from a neighbor, the police arrived, and when the victim tried to run toward them, Toliver jumped on her back. The police

eventually pried him off her and arrested him. The victim had a bruised and bloody nose and was missing chunks of her hair; she later testified at trial that she also suffered blood clots and swelling in both eyes. *Ibid.*

Toliver was charged with attempted first degree murder, two counts of home invasion, four counts of aggravated criminal sexual assault, one count of criminal sexual assault, and one count of unlawful restraint. *Id.* at 1. Testifying at his 2007 bench trial, Toliver claimed that the victim invited him in, that the sex was consensual (and in fact was initiated by her), and that "he did not recall the police kicking in the door, ordering him off the victim, or forcing handcuffs on him"; rather, "[h]e stated that he fell on top of the victim because she tripped over a cord." *Id.* at 4. Toliver was convicted on all counts and was sentenced to 50 years' imprisonment: concurrent 25-year terms for the attempted murder and both home invasion charges, to be served consecutively to concurrent 25-year terms for two of the aggravated sexual assault charges. *Ibid.* The state trial court did not impose any sentences for the other convictions.

On direct appeal, the Appellate Court of Illinois vacated one home-invasion and one aggravated sexual assault conviction as violating Illinois's one-act, one-crime rule. *Id.* at 7-8. The appellate court also remanded the case to the trial court to determine which of the un-sentenced convictions should also be vacated under that rule. *Ibid.* The appellate court rejected Toliver's plea to reverse the attempted murder conviction on the ground that the prosecutor had failed to present sufficient evidence to prove his intent to kill the victim. *Id.* at 5-7. The Supreme Court of Illinois denied Toliver's subsequent petition for leave to appeal. Doc. 13-5; *People v. Tolliver*, 924 N.E.2d 459 (Ill. 2010) (reproduced at Doc. 13-6). On remand, the trial court vacated all of the un-sentenced convictions under the one-act, one-crime rule, except for the unlawful restraint conviction, for which it imposed a concurrent one-year sentence. Doc. 13-

10 at 2. The state appellate court affirmed the conviction and sentence, Doc. 13-10, and Toliver did not file a petition for leave to appeal to the state supreme court.

Meanwhile, Toliver filed a pro se post-conviction petition for relief. Doc. 13-21 at 17-57. After the trial court denied the petition, *id.* at 58-68, Toliver, now with the assistance of counsel, appealed, arguing that his pro se petition had made out the gist of a claim of ineffective assistance of appellate counsel, Doc. 13-11. The state appellate court affirmed the denial of Toliver's petition, Doc. 13-14, and the state supreme court denied Toliver's petition for leave to appeal, Doc. 13-15; *People v. Toliver*, 981 N.E.2d 1002 (Ill. 2012) (reproduced at Doc. 13-16), thereby exhausting Toliver's state court remedies. Toliver timely filed this federal habeas petition on November 20, 2013. *See* 28 U.S.C. §§ 2244(d)(1), (2).

## Discussion

The Warden argues that Toliver's first three claims—(1) that new evidence establishes that the victim lied about not receiving Toliver's Social Security disability checks; (2) that the victim's testimony about her bipolar disorder's not causing her to hallucinate is contradicted by medical opinions; and (3) that his attorney was ineffective in failing to call alibi witnesses—are procedurally defaulted because he "failed to 'fairly present' [them] to the state courts at each stage of their review process." Doc. 12 at 10 (citing *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007)). "To preserve a question for federal collateral attack, a person must present the contention to each level of the state judiciary." *Bland v. Hardy*, 672 F.3d 445, 449 (7th Cir. 2012) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999)). Accordingly, a "procedural default occurs where a habeas petitioner has exhausted his state court remedies without properly asserting his federal claim at each level of state court review." *Crockett v. Hulick*, 542 F.3d 1183, 1192 (7th Cir. 2008) (internal quotation marks omitted).

Toliver did not raise those three claims on direct appeal. His first direct appeal raised only two claims: that there was insufficient evidence to convict him of attempted murder, and that Illinois's one-act, one-crime rule precluded his being convicted of more than one count of home invasion. Doc. 13-2. His second direct appeal raised only one claim: that his conviction for unlawful restraint should be vacated under the one-act, one-crime rule. Doc. 13-7.

Toliver did raise those three claims in his pro se post-conviction petition. Doc. 13-21 at 41-42 (alleging that the victim lied about her having not received Toliver's Social Security disability checks); *id.* at 42-43 (alleging that the victim's testimony about her bipolar disorder "is contradictory to all qualified medical opinions on bipolar disorders"); *id.* at 27 ("In this case counsel[']s failure to call alibi expert witnesse[s] was one of the biggest contributing factors to this defendant, Anthony Toliver[,] being convicted."). But to avoid procedural default, "the petitioner must raise the issue *at each and every level* in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) (emphasis added) (citing *Boerckel*, 526 U.S. at 845). Toliver did not raise those three claims in his post-conviction appeal, where he (through counsel) argued only that his appellate counsel on direct appeal had been ineffective in failing to argue that the 50-year sentence was excessive. Doc. 13-11. So despite having included those three claims in his initial pro se petition, by failing to present them to the state appellate and supreme courts, he procedurally defaulted them. *See Boerckel*, 526 U.S. at 845-46; *McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013); *Guest*, 474 F.3d at 930; *Lewis*, 390 F.3d at 1026.

A habeas petitioner may overcome a procedural default (1) by demonstrating cause for the default and actual prejudice, or (2) by showing that the habeas court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536

(2006); *Smith*, 598 F.3d at 382.  Toliver bears the burden of proving that one of these exceptions applies.  *See Perruquet v. Briley*, 390 F.3d 505, 515 (7th Cir. 2004).  Toliver argues that the first exception applies because his appellate lawyers—both on direct appeal and on post-conviction review—were ineffective in failing to preserve the three defaulted issues, and also that the second exception applies because he is actually innocent.  Doc. 16 at 5-7.

The second ground is meritless.  "[T]enable actual-innocence gateway pleas are rare: '[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013) (second alteration in original) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  Toliver's only attempt to establish his actual innocence arises from his attaching to his habeas petition a statement from fellow prisoner Anthony Harden, who claims that two other people named "Johnny K" and "Co-Co" had kicked in the victim's door and that Johnny K had attacked her.  Doc. 1 at 33-35.  That directly contradicts the trial testimony of the victim, who identified Toliver as her attacker.  Doc. 13-1 at 2-3.

When evaluating a claim of actual innocence for the purpose of excusing a procedural default, a habeas court may be required to make credibility determinations.  *See Schlup*, 513 U.S. at 330 ("[U]nder the gateway standard we describe today, the newly presented evidence may indeed call into question the credibility of the witnesses presented at trial.  In such a case, the habeas court may have to make some credibility assessments.").  The court finds Harden's statement to be incredible.  If true, the statement would mean that Toliver, after being told to leave the victim's apartment, returned a few hours later, saw her bloodied and beaten, and— instead of calling the police or an ambulance—reacted by forcing her to disrobe and engage in a

sex act, and pouncing on her when she tried to escape to the police. In fact, Harden's claim that Johnny K "beat the [victim] up [and] busted her nose and eye," Doc. 1 at 34, contradicts Toliver's own testimony and defense at trial, which were that the victim was not actually injured, *id.* at 10-13. In any event, Toliver cannot meet the actual innocence gateway's demanding standard, for even had Johnny K himself testified at trial, a reasonable jury certainly could have chosen to disbelieve him and to believe the victim instead. *See Coleman v. Lemke*, 739 F.3d 342, 350 (7th Cir. 2014); *Araujo v. Chandler*, 435 F.3d 678, 681 (7th Cir. 2005); *Gomez v. Jaimet*, 350 F.3d 673, 680-81 (7th Cir. 2003).

A more complicated question is whether Toliver's allegations of his appellate lawyers' ineffectiveness can establish the requisite cause to excuse the procedural defaults. The Supreme Court held in *Edwards v. Carpenter*, 529 U.S. 446 (2000), that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim" that must have been presented to the state courts in the first instance. *Id.* at 451. Put another way, "the exhaustion doctrine … generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). Because Toliver never argued in the state court system, not even in his pro se post-conviction petition, that his direct appeal counsel was ineffective for failing to raise the three procedurally defaulted claims, that claim is itself procedurally defaulted and therefore cannot establish cause to excuse the procedural default of those other claims. *See Carpenter*, 529 U.S. at 451-52; *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009); *Ward v. Hinsley*, 377 F.3d 719, 725-26 (7th Cir. 2004). (Unless he can show cause to excuse his procedurally defaulting that

ineffective assistance claim, *see Carpenter*, 529 U.S. at 453, but Toliver does not attempt to make that showing.)

Toliver did argue in his state post-conviction proceedings that his lawyer on direct appeal had been ineffective. Doc. 13-11 at 13-17. But the factual predicate for that ineffective assistance claim was that the direct appeal lawyer had failed to challenge the 50-year sentence as excessive; Toliver did *not* contend that that lawyer had been ineffective in failing to raise the three claims he now wishes to save from procedural default. And so Toliver cannot rely on his direct appeal counsel's alleged ineffectiveness as cause to excuse his procedural default of those three claims. *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) ("[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."); *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam) ("[M]ere similarity of claims is insufficient to exhaust."); *Everett v. Barnett*, 162 F.3d 498, 502 (7th Cir. 1998) ("Everett claims that he was denied the effective assistance of counsel because his trial attorney did not call Darryl Pledger as a witness. … This claim has been procedurally defaulted. Everett raised ineffective assistance of counsel in his state postconviction proceeding and the grounds included counsel's failure to call several witnesses. However, he did not argue in the state court that Pledger should have been called; rather, he named other potential witnesses. The specific ground for ineffectiveness raised in the federal petition must have been raised in the state case.").

Nor can Toliver rely on his post-conviction appellate counsel's alleged ineffectiveness as cause to overcome the procedural default. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings" is non-cognizable in federal habeas proceedings. 28 U.S.C. § 2254(i). And the law long held that the rule precluding a

*procedurally defaulted* ineffective assistance claim from serving as cause applied *a fortiori* to a *non-cognizable* ineffective assistance claim. *See, e.g.*, *Szabo v. Walls*, 313 F.3d 392, 397 (7th Cir. 2002) ("[I]neffective assistance of post-conviction counsel does not supply 'cause' for the cause-and-prejudice formula under which federal courts sometimes entertain claims that were not properly presented to the state courts."). But the Supreme Court held in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), that notwithstanding § 2254(i), ineffective assistance of counsel in initial review collateral proceedings may serve as cause to excuse a procedural default—though only if the underlying defaulted claim is a "substantial" one of ineffective assistance of trial counsel that could not have been effectively raised on direct appeal. *Trevino*, 133 S. Ct. at 1921; *Martinez*, 132 S. Ct. at 1318-20.

That "narrow exception" (the Court's words, *Martinez*, 132 S. Ct. at 1315) to the procedural default rule cannot rescue Toliver's first two claims, which do not involve allegations of ineffective assistance of trial counsel. And although the third claim involves such an allegation, the exception does not rescue that claim either. The reason is that the *Martinez/Trevino* exception applies only where, as in Arizona, "a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding," *Martinez*, 132 S. Ct. at 1318, or, as in Texas, where the state system "makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal," *Trevino*, 133 S. Ct. at 1921. Neither is the case here: Illinois not only allows claims of ineffective assistance of trial counsel to be raised on direct appeal, but has a well-established procedure, known as a "*Krankel* hearing," to facilitate the bringing of such claims on a post-trial motion by allowing (for all but frivolous ineffective assistance claims) for the appointment of counsel and expansion of the record. *See People v. Taylor*, 927 N.E.2d 1172,

1175-76 (Ill. 2010); *People v. Krankel*, 464 N.E.2d 1045, 1049 (Ill. 1984); Note, "Giving

Meaning to 'Meaningful Enough': Why *Trevino* Requires New Counsel on Appeal," 82

*Fordham L. Rev.* 1855, 1884-86 (2014) (citing cases) (footnotes omitted). The *Martinez/Trevino*

exception is therefore unavailable to Toliver and cannot be deployed to save his third habeas

claim from procedural default. *See Chatman v. Magana*, 2014 WL 3866016, at *5 (N.D. Ill.

Aug. 6, 2014) (holding that an Illinois prisoner could not successfully invoke *Martinez/Trevino*

due to the availability of a *Krankel* hearing); *Puente v. Chandler*, 2014 WL 1318675, at *9-10

(N.D. Ill. Apr. 1, 2014) (same); *Murphy v. Atchison*, 2013 WL 4495652, at *21-22 (N.D. Ill.

Aug. 19, 2013) (same); *see also Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014) (holding that

a Wisconsin prisoner could not successfully invoke *Martinez/Trevino* because "Wisconsin law

expressly allows—indeed, in most cases requires—defendants to raise claims of ineffective

assistance of trial counsel as part of a consolidated and counseled *direct* appeal, and provides an

opportunity to develop an expanded record").

But even were Illinois's system like Texas's system for purposes of *Trevino*, *see* Note,

*supra*, 82 *Fordham L. Rev.* at 1901 (arguing that a *Krankel* hearing does not satisfy *Trevino*),

Toliver still could not benefit from the exception. The reason is that *Martinez* explicitly states

that "[t]he holding in this case does not concern attorney errors in other kinds of proceedings,

*including appeals from initial-review collateral proceedings*." 132 S. Ct. at 1320 (emphasis

added). In other words, as a leading treatise puts it, "the *Martinez* rule would not provide 'cause'

for reaching the merits of a claim of ineffective assistance of counsel that was properly raised

during the first available collateral review proceeding, but later defaulted because it was not

pursued in an *appeal* or other opportunity for review of that proceeding in accordance with state

law, as was the case in *Coleman*." 7 Wayne R. LaFave et al., *Criminal Procedure* § 28.4(d), p.

54 (3d ed. supp. 2013-2014).  That description fits Toliver's case to a tee.  *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (holding that a petitioner's claims of ineffective assistance of post-conviction appellate counsel could not constitute cause for excusing a procedural default under *Martinez* even where the petitioner had raised the defaulted ineffective assistance of trial counsel claims in his initial post-conviction petition); Nancy J. King, "Enforcing Effective Assistance After *Martinez*," 122 *Yale L.J.* 2428, 2432-33 (2013) ("But the exception is narrow indeed.  As lower court decisions applying *Martinez* demonstrate, if a petitioner's claim … was defaulted on direct or collateral appeal rather than at the initial collateral proceeding, … the *Martinez* gateway to merits review remains closed.") (citing cases) (footnotes omitted).

One wrinkle remains.  Toliver's habeas petition, generously read, does suggest a possible alternative ground for excusing a procedural default as to the first claim: that "newly discovered evidence," namely, a December 2008 letter from the Social Security Administration addressed to him at the victim's address, proves (says Toliver) that the victim was lying when she testified that she had not received Toliver's Social Security disability checks.  Doc. 1 at 5, 25.  Although he calls the letter "newly discovered," Toliver does not say when he actually received it.  But even assuming he received it only recently, Toliver would still have to meet the criteria for one of the two exceptions to procedural default.  As for the first exception: "Cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his claim.  Prejudice is established by showing that the violation of the petitioner's federal rights worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Thompkins v. Pfister*, 698 F.3d 976, 987 (7th Cir. 2012) (citations and internal quotation marks omitted).  As for the second exception: "The

fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Smith*, 598 F.3d at 387-88 (quoting *Schlup*, 513 U.S. at 327).

Toliver does not even attempt to show how the letter qualifies under either exception, and the court is hard pressed to imagine how the letter's absence could have affected the conviction at all, let alone how its absence could have "infect[ed] his entire trial with error of constitutional dimensions." That is particularly true given that the letter is dated more than a year *after* the trial took place. *Compare* Doc. 1 at 25 (letter dated December 13, 2008) *with* Doc. 13-2 at 5 (Toliver's brief noting that he was convicted at "a bench trial on September 24, 2007"). Moreover, even if the victim were lying about not receiving Toliver's Social Security checks, it would have had no bearing on whether Toliver kicked in her door, threatened her life, sexually assaulted her, and restrained her when she tried to escape. Anyway, the letter does not prove that the victim was lying; it proves nothing more than that in December 2008 the Social Security Administration thought that Toliver still lived at the victim's address—which, by her own admission, he did until just a few weeks before his arrest. Doc. 1 at 25 (letter); *id.* at 8 (victim's testimony that Toliver was living with her in November 2004). In short, a reasonable juror could have convicted Toliver even with the (irrelevant and possibly inadmissible) letter in hand.

Having procedurally defaulted his first three claims, Toliver is left with only his fourth, that there was insufficient evidence to convict him beyond a reasonable doubt of attempted murder. "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established

in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (one citation omitted). Although Toliver does not specify which of these grounds he invokes, his petition will be broadly construed and each ground will be considered.

With respect to § 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court did] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Brown v. Finnan*, 598 F.3d 416, 421-22 (7th Cir. 2010). "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Richter*, 131 S. Ct. at 785 (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786 (internal quotation marks omitted). Put another way, to obtain relief under the "unreasonable application" prong of § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

"The relevant decision for purposes of [the court's] assessment is the decision of the last state court to rule on the merits of the petitioner's claim[.]" *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006). The last state court decision to rule on the merits of Toliver's insufficient evidence claim was the state appellate court's opinion on direct appeal. Doc. 13-1. Far from "appl[ying] a rule different from the governing law set forth in [Supreme Court] cases," *Cone*,

535 U.S. at 694, the state appellate court correctly identified the governing rule for an insufficient evidence claim, as stated in *Jackson v. Virginia*, 443 U.S. 307 (1979). Doc. 13-1 at 5 (citing *People v. Collins*, 478 N.E.2d 267, 277 (1985), in turn quoting *Jackson*). That rule provides that an insufficient evidence claim fails if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The state appellate court applied the rule and concluded: "Viewed in a light most favorable to the prosecution, we find that the evidence of the defendant's savagery towards the victim, combined with his threats and the injuries she sustained, was sufficient to allow the trier of fact to find beyond a reasonable doubt that the defendant acted with the requisite intent to kill." Doc. 13-1 at 6; *see also ibid.* (noting that Toliver broke "open a double-locked door," "pull[ed] a telephone from the wall [and] beat[ the victim] over the head with it," "told her she was 'going to die tonight,'" "dragged her by the hair through the apartment," and "repeatedly punched her in the face with his bare hands and fists"). A "fairminded jurist" could easily agree with this conclusion, and so § 2254(d)(1) precludes this court from disturbing it on collateral review.

Nor were the facts as found by the state court unreasonable under § 2254(d)(2). A state court decision involves an "unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Morgan v. Hardy*, 662 F.3d 790, 801 (7th Cir. 2011). "[A] state court's factual finding is never unreasonable 'merely because the federal habeas court would have reached a different conclusion in the first instance.' Rather, the state court's determination of the facts must have been an unreasonable error in light of the evidence presented to that court." *Collins v. Gaetz*, 612 F.3d 574, 586 (7th Cir. 2010) (quoting *Wood v. Allen*, 130 S. Ct. 841, 849 (2010)). "[F]actual determinations of a state court are

presumed to be correct and hence not 'unreasonable,' unless a petitioner can show otherwise by clear and convincing evidence." *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004); *see also Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010).

To the extent that Toliver challenges the state court's determination of the facts as unreasonable, he appears to base his submission on his allegation that the victim's "testimony was very confused and confli[c]ting." Doc. 1 at 6. But he overlooks the fact that the victim's testimony was corroborated by a neighbor, by the arresting police officer, and by photographs of the crime scene and the victim herself. Doc. 13-1 at 3-4. Toliver also ignores the trial court's finding his testimony "incredible" and his account of the incident "a figment of his imagination" in light of the extensive contradictory evidence presented at trial. *Id*. at 4-5. In short, Toliver has not come close to showing that the state court's determination of facts was unreasonable, let alone by clear and convincing evidence.

## Conclusion

For the foregoing reasons, Toliver's petition for a writ of habeas corpus is denied. Habeas Rule 11(a) provides that the district court "must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). Regarding the three procedurally defaulted claims, the applicable standard is:

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Anderson v. Litscher*, 281 F.3d 672, 673-74 (7th Cir. 2002). Regarding the insufficient evidence claim, the applicable standard is:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack*, 529 U.S. at 483-84 (internal quotation marks omitted); *see also Lavin*, 641 F.3d at 832;

*Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

This court's denial of Toliver's federal habeas claims relies on settled precedents and principles. The application of those precedents and principles to Toliver's petition does not present difficult or close questions, and so the petition does not meet the applicable standard for granting a certificate of appealability. The court therefore denies a certificate of appealability.

August 27, 2014                    _____

United States District Judge